UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Mark and Sharon Monroe,                                     Case No. 13-24570-GMH

                            Debtors.                        Chapter 13

Mark and Sharon Monroe,

                      Plaintiffs,

v.                                                          Adversary No. 13-02747

Seaway Bank & Trust Company, and
U.S. Department of Housing and Urban Development,

                      Defendants.

## DECISION

The United States Department of Housing and Urban Development and Seaway Bank & Trust Company hold claims that are secured by junior mortgages encumbering the principal residence of chapter 13 debtors Mark and Sharon Monroe. The Monroes allege—and no one contests—that they owe more to Wells Fargo Bank, N.A., which holds the senior mortgage encumbering their residence, than their residence is worth. The Monroes seek a judgment declaring that (i) HUD's and Seaway's claims are "unsecured," as that term is defined in 11 U.S.C. §506(a), and (ii) the junior mortgages either are void under 11 U.S.C. §506(d) or can be extinguished through the Monroes' chapter 13 debt adjustment plan pursuant to 11 U.S.C. §1322(b)(2).

Only HUD answered the complaint. HUD acknowledges that its mortgage on

the Monroes' principal residence is junior to the mortgages of both Wells Fargo and Seaway, and that the amount the Monroes owe to Wells Fargo exceeds the property's value. Because Wells Fargo's claim is undersecured, neither Seaway's nor HUD's lien attaches to any value in the property. This makes Seaway's claim irrelevant to resolving the Monroes' dispute with HUD, and, for ease of explication, this decision treats HUD as the only defendant. The Monroes are entitled to relief against Seaway if and only if they prevail on the legal defenses that HUD raises against the Monroes' attempt to eliminate its lien.

HUD contends that the Monroes cannot eliminate its junior-mortgage lien because (i) §506(d) doesn't authorize a court to invalidate a lien solely on the grounds that the lien is "underwater," i.e., on the grounds that the property is worth less than the amount owed to senior lienholders, and (ii) the Monroes are ineligible for a discharge pursuant to 11 U.S.C. §1328(f) as a result of the chapter 7 discharge they received three years before commencing this case, see 11 U.S.C. §1328(f) ("[T]he court shall not grant a discharge of all debts provided for in the plan . . . if the debtor has received a discharge . . . in a case filed under chapter 7 . . . of this title during the 4-year period preceding the date" that the debtor filed his chapter 13 petition.).

Controlling authority dooms the Monroes' contention that §506(d) invalidates HUD's lien. But there is no controlling precedent and this district's judges have disagreed on whether the Code allows chapter 13 debtors who are not eligible for a discharge under §1328(f)(1) to "strip" — i.e., eliminate — through their chapter 13 plan an underwater junior lien. Compare *Lindskog v. M&I Bank*, 480 B.R. 916 (E.D. Wis. 2012) (Clevert, C.J.) (debtor who is ineligible for a chapter 13 discharge under §1328(f)(1) may not strip a creditor's state-law lien rights through her chapter 13 plan), with *In re Fair*, 450 B.R. 853 (E.D. Wis. 2011) (Randa, J.) (contra). Bankruptcy court decisions in this district have consistently rejected discharge-ineligible chapter 13 debtors' efforts to

2

strip liens. See *Lindskog v. M&I Bank (In re Lindskog)*, 451 B.R. 863 (Bankr. E.D. Wis. 2011), *aff'd*, 480 B.R. 916 (E.D. Wis. 2012); *MacDonald v. HSBC Mortg. Servs., Inc. (In re MacDonald)*, Case No. 09-31552, Adv. No. 10-02287 (Bankr. E.D. Wis. Oct. 25, 2010), http://www.wieb.uscourts.gov/opinions/files/pdfs/MacDonald,_et_al._v._HSBC_Mortgage_Services,_Inc.,_10-2287.pdf; *Blosser v. KLC Fin., Inc. (In re Blosser)*, Case No. 07-28223, Adv. No. 08-02353, 2009 WL 1064455 (Bankr. E.D. Wis. April 15, 2009).

At the initial pretrial conference, the parties agreed to submit briefs addressing whether the Code allows the Monroes to eliminate HUD's lien and identifying any disputed facts. After the parties submitted their briefs and supplemental authority, I heard oral argument. Based on the parties' briefs, HUD's supplemental filings, and the arguments presented by counsel, I conclude that the parties do not dispute any material fact and whether the Monroes can eliminate HUD's lien can be adjudicated as a matter of law. My conclusions of law based on the undisputed facts are described below.[1]

I

HUD's claim arose after Wells Fargo and Seaway (or their predecessors in interest, a detail I ignore) recorded their mortgages on the Monroes' principal residence. Wells Fargo recorded its first-priority mortgage in November 2002, and Seaway recorded its second-priority mortgage in July 2008. In March 2009, the Monroes executed a note in HUD's favor and a mortgage on their principal residence to secure that note. HUD recorded its third-priority mortgage in April 2009.

In February 2010, the Monroes filed a petition under chapter 7. A few months later the bankruptcy court entered a chapter 7 discharge, which discharged—among

---

[1] This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B), (K) and (L). This court has jurisdiction under 28 U.S.C. §1334 and the Eastern District of Wisconsin's order of reference entered pursuant to 28 U.S.C. §157(a). See Order of Reference (E.D. Wis. July 16, 1984), *available at* http://www.wied.uscourts.gov/index.php?option=com_content&task=view&id=15&Itemid=123.

other debts—their personal obligations to repay HUD.[2]

The Monroes commenced this chapter 13 case on April 12, 2013. HUD filed a proof of claim asserting its right to payment of the Monroes' debt secured by its lien, which was not affected by the Monroes' discharge because the lien passed through their chapter 7 bankruptcy unaltered. See *Dewsnup v. Timm*, 502 U.S. 410, 418–20 (1992); *Long v. Bullard*, 117 U.S. 617, 620–21 (1886). HUD's claim in this case is nonrecourse; it consists solely of the right to collect the debt owed on the note executed in 2009 by foreclosing on the collateral securing that note—the Monroes' principal residence. See *Johnson v. Home State Bank*, 501 U.S. 78, 83–86 (1991).

But, as already explained, when the Monroes filed this case their residence was worth less than the amount owed to lenders holding liens senior to HUD's. HUD concedes this point, stating: "HUD's third position lien does not currently attach to any equity in the Debtors' residence, even if Seaway's second position lien is stripped by its default." No. 13-02747, CM-ECF No. 14, at 4. Outside of bankruptcy or foreclosure by a senior lienholder, HUD could have awaited an increase in the property's value sufficient to satisfy through a foreclosure sale both the amount that the Monroes owe to the senior lienholders and some or all of the amount that the

---

[2] The Monroes did not schedule the contractual debt owed to HUD in their chapter 7 case. Even so, the discharge is effective as to "all debts that arose before the date of the order for relief", except as provided in 11 U.S.C. §523. 11 U.S.C. §727(b). Section 523 excepts from discharge debts that are "neither listed nor scheduled under section 521(a)(1) . . . in time to permit" a creditor without actual knowledge of the bankruptcy to either (i) timely file a proof of claim or (ii) seek a determination of dischargeability of the debt, if the debt arose as a result of fraud or willful and malicious injury of the varieties excepted from discharge by §523(a)(2), (4), or (6). 11 U.S.C. §523(a)(3). HUD doesn't contend that the Monroes' contractual debt arose out of fraud or willful injury. Courts have taken the position that in a no-asset chapter 7 case, like the Monroes', the discharge applies to a debtor's personal liability for all debts not subject to exception under §523(a)(2), (4), or (6), because the clerk does not afford creditors an opportunity to file proofs of claim in those cases. See, e.g., *In re Guseck*, 310 B.R. 400, 403–05 (Bankr. E.D. Wis. 2004); but see *Birkett v. Columbia Bank*, 195 U.S. 345, 349–51 (1904). In all events, HUD has conceded that the Monroes' personal liability to HUD was discharged in their chapter 7 case. No. 13-02747, CM-ECF No. 17, at 2. Consequently, this decision presumes that the Monroes' chapter 7 discharge eliminated their personal liability to HUD and that HUD's claim in this case is nonrecourse.

4

Monroes owe to HUD. The central question presented here is whether the Monroes can eliminate through their chapter 13 case HUD's right to await such an increase in the property's value.

Again, the Monroes offer two bases for eliminating HUD's lien. First, they argue that the lien is void under §506(d) because it "secures a claim . . . that is not an allowed secured claim". 11 U.S.C. §506(d). Second, they contend that §1322(b)(2) allows them to eliminate HUD's lien by modifying HUD's rights through their chapter 13 plan. The Monroes have proposed a chapter 13 plan that provides:

> Debtors [intend] to strip off the wholly unsecured second and third mortgages [on the debtors' primary residence held by] Seaway Bank and Trust Company and the United States Department of Housing & Urban Development . . . pursuant to Section 1322(b)(2). . . . Upon successful completion of the Debtors' Chapter 13 plan, the junior mortgages held by Seaway Bank and Trust Company and [the U.S.] Department of Housing and Urban Development shall be deemed to be fully paid and their liens shall have no legal effect[.]

No. 13-24570, CM-ECF No. 73, at 2.

HUD objects to the Monroes' proposed chapter 13 plan "based on its position, to be litigated in [this] adversary proceeding, that HUD's lien, even if not supported by equity in the debtor[s'] home, may only be stripped in the event of a chapter 13 discharge." *Id.*, CM-ECF No. 75, at 3; *see also id.*, CM-ECF No. 84 (renewing objection). This decision, therefore, resolves both HUD's defense to the entry of judgment in this adversary proceeding and its objection to confirmation of the Monroes' proposed chapter 13 plan.

## II

The Monroes cannot avoid HUD's lien under §506(d). Section 506(d) provides that a lien is void "[t]o the extent that [it] secures a claim against the debtor that is not an allowed secured claim" (unless either of two exceptions—both of which are

5

inapplicable here—apply). §506(d). The Monroes correctly contend that under §506(a) a claim can only be "secured" to the extent that a debtor's bankruptcy estate has an interest in the property. 11 U.S.C. §506(a). Subsection (a)(1) provides, "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." *Id.* Thus, a creditor has a secured claim under §506(a) only to the extent that its lien attaches to value in the property that its lien encumbers. And a creditor holding a junior lien has a secured claim for §506(a) purposes only to the extent that the value of the debtor's property that the junior lien encumbers is greater than the amount the debtor owes to creditors holding senior liens on that property.

   HUD concedes that its claim is "unsecured" under §506(a), because, again, the amount owed on the claims secured by the liens senior to HUD's lien exceeds the value of the Monroes' residence. *Id.* The Monroes argue that because HUD's lien "does not attach to any value," HUD's claim is not a "secured claim" for purposes of the Code, and therefore "void according to §506(d)". No. 13-02747, CM-ECF No. 12, at 3.

   Despite the apparent textual support for the Monroes' argument, it is foreclosed by controlling authority. The Supreme Court held in *Dewsnup v. Timm* that "allowed secured claim" in §506(d) "means a claim that is, first, allowed under §502 and, second, secured by a lien enforceable under state law, without regard to whether that claim would have been deemed secured or unsecured under §506(a)." *Ryan v. United States (In re Ryan)*, 725 F.3d 623, 625 (7th Cir. 2013). *Dewsnup* divorced §506(d)'s use of "allowed secured claim" from §506(a)'s description of a claim "secured by a lien on property" as only being a secured claim "to the extent of the value of such creditor's interest in the estate's interest in such property". §506(a). In so doing, *Dewsnup*

6

reasoned that §506(d)'s text is "best interpreted as confirming the venerable principle of *Long v. Bullard* . . . that bankruptcy law permits a lien to pass through bankruptcy unaffected, provided that it's a valid lien and secures a valid claim ('an allowed secured claim')." *Palomar v. First Am. Bank*, 722 F.3d 992, 993 (7th Cir. 2013).

The Monroes contend that *Dewsnup*'s construction of §506(d) can be ignored because *Dewsnup* is a chapter 7 case, and this case arises under chapter 13 where "lien stripping is 'expressly and broadly permitted'". No. 13-02747, CM-ECF No. 12, at 3 (quoting *In re Fair*, 450 B.R. at 856). But, as the Seventh Circuit has explained and §103(a) of title 11 requires, the provisions of §506(d) have the same meaning in cases filed under chapter 13 as they do in cases filed under chapter 7. See *Ryan*, 725 F.3d at 625 ("Accordingly, §506(d), which is part of Chapter 5, applies equally to cases under Chapter 7 and Chapter 13."); 11 U.S.C. §103(a) ("Except as provided in section 1161 of this title, chapters 1, 3, and 5 of this title apply in a case under chapter 7, 11, 12, or 13 of this title".). *Ryan*, controlling authority that the Monroes ignore, expressly rejects their argument that a chapter 13 debtor can use §506(d) to void a valid state-law lien based solely on the fact that the lien is underwater. *Ryan*, 725 F.3d at 625–28.

### III

### A

### 1

The Monroes' alternative basis for eliminating HUD's lien is that they can do so through their chapter 13 plan. Section 1322(b)(2) provides that a debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims". 11 U.S.C. §1322(b)(2). At first glance, this section might appear unavailable to the Monroes, since HUD's lien is a "security interest in real property that is the debtor[s'] principal residence". *Id.*; see also 11 U.S.C. §101(51) (defining

7

"security interest" as a "lien created by an agreement"). But the Supreme Court's reasoning in *Nobelman v. American Savings Bank* directs that §506(a) determines whether a creditor's claim is "secured" for purposes of §1322(b)(2). 508 U.S. 324, 328–29 (1993).

*Nobelman* addressed whether a debtor's chapter 13 plan could "cram down" a claim secured solely by a first-priority lien on a debtor's principal residence by paying the holder of the claim only an amount equal to the value of the estate's interest to which the lien could attach. The Court held that if the estate has any interest in the residence to which a creditor's lien can attach, the creditor holds a "secured claim" for purposes of §1322(b)(2). And, if the creditor has a secured claim, §1322(b)(2)'s antimodification provision deprives a debtor's chapter 13 plan of its ability to modify the claimholder's rights to the full payment of its claim. *Id.* at 331–32.

In so holding, however, the Court deemed "correct" the debtors' reading of "secured claim" in §1322(b)(2) as being determined by §506(a), stating: "[The debtors] were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim." *Id.* at 328. Thus, §506(a)'s inquiry into whether there is value in property to which a lien can attach determines whether a claim is "secured" or "unsecured" for purposes of §1322(b)(2). If there is such value and the claim is secured only by the debtor's principal residence, the claim is "secured" for purposes of §1322(b)(2), and the debtor's chapter 13 plan cannot modify the claimholder's rights. If, however, there is no value to which the lien can attach, the claim is "unsecured" for purposes of §1322(b)(2), and the antimodification provision does not apply.

Following this reasoning, every court of appeals to consider the issue has held that a chapter 13 plan can eliminate a wholly underwater lien that encumbers a debtor's principal residence. See *Branigan v. Davis (In re Davis)*, 716 F.3d 331, 334–36

8

(4th Cir. 2013); *Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220, 1224–27 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663, 666–69 (6th Cir. 2002); *Pond v. Farm Specialist Realty (In re Pond)*, 252 F.3d 122, 124–27 (2d Cir. 2001); *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1358–60 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n (In re Bartee)*, 212 F.3d 277, 296 (5th Cir. 2000); *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 615 (3d Cir. 2000). Although not directly addressing the issue, the Seventh Circuit recently acknowledged the widespread view that §1322(b)(2) allows lien stripping and did not foretell charting a different course, stating: "[D]espite [§1322(b)(2)'s antimodification provision], courts allow a Chapter 13 plan to eliminate a secured junior claim (such as a claim secured by a second mortgage) against residential property if the security interest no longer has value because what the debtors owe holders of liens senior to this creditor's lien (the holder of a first mortgage for example) exceeds the value of the property." *Palomar*, 722 F.3d at 995.

2

Most of the decisions allowing lien stripping under §1322(b)(2) involve recourse claims. And it is easy to understand eliminating an underwater lien as a "modification" of a claimholder's rights when the holder has the right to collect the amount owed from both the property and from the debtor personally. In that instance, the chapter 13 plan modifies the creditor's rights by eliminating the creditor's right to collect the amount owed from the property, leaving only the right to collect from the debtor personally—oversimplifying, a set of two rights is "modified" by changing it to a set containing only one right. See *In re Kirchner*, 216 B.R. 417, 421–22 (Bankr. W.D. Wis. 1997). But where, as here, the debtors' personal liabilities have been discharged and the creditor's claim consists entirely of an underwater lien, the plan's proposed elimination of the lien is less obviously a "modification" of the claimholder's rights.

9

"Modify" typically means to change some parts of a thing while leaving other parts unchanged. See, e.g., NEW OXFORD AMERICAN DICTIONARY 1124 (3d ed. 2010) (defining "modify" as an action to "make partial or minor changes to (something), typically so as to improve it or to make it less extreme"). As a result, it would seem to require at least a somewhat nonstandard use of "modify" to speak of eliminating a claimholder's only right as a "modification." And if eliminating a claimholder's only right is not a modification under §1322(b)(2), then perhaps §1322(b)(2) provides no basis for eliminating nonrecourse liens—even when the lien is underwater—unless the plan provides the claimholder with some other benefit.[3] Cf. *Airadigm Commc'ns, Inc. v. FCC (In re Airadigm Commc'ns, Inc.)*, 519 F.3d 640, 649 (7th Cir. 2008) (chapter 11 plan may eliminate lien if the plan provides the lienholder with other compensation or the plan exercises bankruptcy powers to "exchange, extinguish, impair or otherwise impact the [lienholder's] interest").

Some courts, however, have understood a chapter 13 plan to temporally modify a claimholder's lien rights: rather than being able to retain the lien until the debt is repaid, the creditor can only retain its lien until such time as either the plan or the confirmation order provides. See 11 U.S.C. §1327(b) & (c) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor[] . . . free and clear of any claim or interest of any creditor provided for by the plan."); see also *In re Scantling*, 465 B.R. 671, 680 (Bankr. M.D. Fla. 2012). Moreover, the creditor whose lien is stripped by the debtor's chapter 13 plan retains a contingent interest in the property. If the debtor's case is

---

[3] It is not obvious that a chapter 13 plan can always provide such a benefit. Even though a chapter 13 plan may separately classify the holders of unsecured claims, it may do so only if the plan does "not discriminate unfairly against any class so designated", 11 U.S.C. §1322(b)(1), and it must provide that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7", 11 U.S.C. §1325(a)(4).

dismissed or converted before the plan is completed, the creditor's rights as they existed before the debtor commenced his case are reinstated unless the debtor has paid the full amount of the creditor's claim. See 11 U.S.C. §349(b)(3) ("dismissal of a case . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title"); 11 U.S.C. §348(f)(1)(C) (for any case "converted from chapter 13 . . . the claim of any creditor holding security as of the date of the filing of the petition shall continue to be secured by that security unless the full amount of such claim determined under applicable nonbankruptcy law has been paid in full"). A chapter 13 plan that proposes to strip a nonrecourse lien can therefore be conceived of as modifying the nonrecourse creditor's right to foreclose by making that right contingent on the debtor's ability to perform the plan fully: The chapter 13 plan terminates the creditor's foreclosure right permanently only if the debtor completes the plan.

The Monroes' proposed chapter 13 plan in fact provides that HUD's lien will be deprived of legal effect "[u]pon [the Monroes'] successful completion of the . . . plan". See No. 13-24570, CM-ECF No. 73, at 2. Thus, under the plan's terms, HUD retains its lien until the Monroes complete all plan payments and other obligations imposed by the plan.

In all events, HUD has neither challenged the Monroes' claim for relief in the adversary proceeding nor objected to confirmation of their proposed chapter 13 plan on the basis that stripping its lien alters its rights in a way that §1322(b)(2) does not authorize. Consequently, HUD has forfeited any such challenge to the Monroes' claim for relief or objection to the Monroes' proposed chapter 13 plan.

B

1

HUD concedes that "lien stripping [is] available, under appropriate circumstances, in Chapter 13 cases . . . [as a result of] sections 1322 and 1325 of the Code". No. 13-02747, CM-ECF No. 14, at 7. In HUD's view, however, cases in which a debtor cannot obtain a chapter 13 discharge do not present "appropriate circumstances" to strip a lien. See *id.* at 7–8.

In support of this view, HUD relies on *In re Jarvis*, 390 B.R. 600 (Bankr. C.D. Ill. 2008), and decisions in this district that have followed *Jarvis*. See *Lindskog*, 480 B.R. at 918–19. As explained below, however, *Jarvis* is unpersuasive.

No Code provision supports *Jarvis*'s holding that a debtor's chapter 13 plan can strip an underwater lien only if the debtor is eligible for a discharge. *Jarvis* adopted that principle from *In re Lilly*, 378 B.R. 232 (Bankr. C.D. Ill. 2007). *Lilly*, however, dealt with a chapter 13 plan's treatment of "allowed secured claim[s]", rather than the treatment of unsecured claims. See 11 U.S.C. §1325(a)(5). Again, applying the text of §506(a) and the reasoning of *Nobelman*, unsecured claims include a creditor's claim— such as HUD's claim—that is deemed unsecured because the amount the debtor owes to senior lienholders exceeds the value of the collateral.

*a*

*Lilly* held that a chapter 13 debtor who was ineligible for a discharge could not permanently modify through her chapter 13 plan the interest rate that the debtor owed on a "910 claim"—a claim based on a debt incurred by the debtor within 910 days of filing for bankruptcy that was secured by a motor vehicle purchased for personal use. 378 B.R. at 236–37. Section 1325(a)'s unnumbered "hanging paragraph" provides that

12

such a claim is not subject to §506(a).[4] *Lilly* concluded that the debtor's chapter 13 plan could modify the claim's interest rate but that the plan could do so only during the life of the plan—the modified interest rate could not be "permanent and binding". *Id.* The debtor's no-discharge plan could not permanently change the claim's interest rate, *Lilly* reasoned, because 11 U.S.C. §1325(a)(5)(B)(i)(I) required the debtor's plan to provide that each holder of an allowed secured claim "retain the lien securing such claim until the earlier of . . . (aa) the payment of the underlying debt determined under nonbankruptcy law; or (bb) discharge under section 1328". *Id.;* see 11 U.S.C. §1325(a)(5)(B)(i)(I).

*Lilly*'s holding thus depended on the application of §1325(a)(5)'s requirement that the holders of "allowed secured claim[s]" retain their liens until their claims are paid in full or the debtor receives a discharge. §1325(a)(5)(B)(i)(I). As a result, that holding does not apply to a claim that is not an "allowed secured claim" under §1325(a)(5).

*b*

Section 1325(a)(5) imposes plan confirmation requirements applicable only to *"allowed secured claim[s]* provided for by the plan". §1325(a)(5) (emphasis added). An "allowed secured claim" for purposes of §1325(a)(5) is an allowed claim that is "secured" as determined under §506(a), with the exception of those claims that §1325(a)'s hanging paragraph expressly immunizes from the application of §506(a). See *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 960–62 (1997); *In re Howard*, 597 F.3d

---

[4] Section 1325(a)'s hanging paragraph provides, "For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing." 11 U.S.C. §1325(a) (hanging paragraph).

13

852, 854 (7th Cir. 2010); see also *Till v. SCS Credit Corp.*, 541 U.S. 465, 470 (2004) (applying §506(a) to a claim subject to §1325(a)(5)(B) to determine the amount of the creditor's secured claim); 4 COLLIER ON BANKRUPTCY ¶506.03[4][a], at 506-27 (Alan N. Resnick & Henry J. Sommer, eds.,16th ed. 2014) ("for purposes of section 1325(a)(5), the amount of the secured creditor's secured claim is to be determined in accordance with section 506(a)"); 8 COLLIER ON BANKRUPTCY ¶1325.06[1][a], at 1325-26 to -27 ("Only a claim . . . determined secured to the extent permitted by subsections 506(a) and (b) comes within the protective provisions of section 1325(a)(5) relating to allowed secured claims." (footnotes omitted)); 2 ROBERT E. GINSBERG & ROBERT D. MARTIN, GINSBERG & MARTIN ON BANKRUPTCY §15.05[C], at 15-79 (Susan V. Kelley, ed., 5th ed. Supp. 2012) ("[Under §1325(a)(5)(B)] the lien on the collateral will secure only the limited portion of the undersecured creditor's total claim that is the allowed secured claim." (citing §506)). Indeed, for §1325(a)'s "hanging paragraph" to have purpose, "allowed secured claim" in §1325(a)(5) must be understood as determined ordinarily by §506(a); cf. *In re Wright*, 492 F.3d 829, 832–33 (7th Cir. 2007).[5]

---

[5] As already discussed, *Dewsnup* construed "allowed secured claim" in §506(d) to mean "any claim that is, first, allowed [pursuant to §502], and, second, secured." 502 U.S. at 415, 417. HUD's claim is unquestionably an "allowed secured claim" in this sense, and the "normal rule of statutory construction," as the Supreme Court has repeatedly emphasized, is "that words repeated in different parts of the same statute generally have the same meaning." *Law v. Siegel*, 134 S. Ct. 1188, 1195 (2014) (internal quotation marks omitted). But *Dewsnup* itself abandoned this normal rule of statutory construction when it read "allowed secured claim" in §506(d) differently than §506(a)'s definition of "secured claim". See *Dewsnup*, 502 U.S. at 420–22 (Scalia, J., dissenting). The Court did so principally because it concluded that §506(d) was insufficiently pellucid to conclude that Congress had changed *Long v. Bullard*'s rule that liens pass through liquidation bankruptcies unaltered. *Id.* at 419–20. The Court noted, "Were we writing on a clean slate, we might be inclined to agree with petitioner that the words "allowed secured claim" must take the same meaning in § 506(d) as in § 506(a)." *Id.* at 417. The Court expressly reserved for later consideration whether *Dewsnup*'s construction of "allowed secured claim" would extend to the use of that phrase in other Code sections, stating, "Accordingly, we express no opinion as to whether the words 'allowed secured claim' have different meaning in other provisions of the Bankruptcy Code." *Id.* at 417 n.3.

These caveats alone might not suffice to abandon the ordinary rule of construction. But *Dewsnup*'s reading of "allowed secured claim" is incompatible both with other provisions in §1325 and with the Court's interpretation of §1325 in *Rash* and *Till*. Indeed, if "allowed secured claim" in §1325 meant

14

As already explained, applying §506(a), HUD's claim is not "an allowed secured claim." HUD concedes this point, stating that its "claim is not an allowed secured claim but rather may be treated as an unsecured claim in the [Monroes'] Chapter 13" plan. No. 13-02747, CM-ECF No. 14, at 8. Thus, §1325(a)(5)(B)(i)(I)'s requirement that the debtors' chapter 13 plan provide that all claimholders holding allowed secured claims retain their liens until they are either paid the full amount owed to them under nonbankruptcy law or the debtors receive a discharge does not apply to HUD's claim.

2

Although recognizing §1325(a)(5)(B)(i)(I)'s inapplicability, HUD persists in its reliance on *Jarvis*'s holding that a "no-discharge Chapter 13 case may not . . . result in a permanent modification of a creditor's rights where such modification has traditionally only been achieved through a discharge and where such modification is not binding if a case is dismissed or converted." 390 B.R. at 605–06. Neither HUD nor *Jarvis* provide a compelling justification for concluding either that (i) the modification of a creditor's state-law lien rights is "traditionally . . . achieved through a discharge" or (ii) a chapter 13 debtor's ineligibility for a discharge requires a court to either convert or dismiss his case.[6]

---

"allowed claims secured for state-law purposes," as *Dewsnup* reads §506(d), then cram down would seemingly be unavailable, because §1325(a)(5) requires a debtor's plan to distribute to a non-consenting holder of an "allowed secured claim" property on "account of such claim" the value of which "is not less than the allowed amount of such claim". 11 U.S.C. §1325(a)(5)(B)(ii). The "allowed amount of such [allowed secured] claim" would be equal to the amount of the claim as determined under nonbankruptcy law if "allowed secured claim" in §1325(a)(5)(B) is understood as *Dewsnup* read "allowed secured claim" in §506(d). See *Dewsnup*, 502 U.S. at 417 ("§ 506(d) does not allow [a debtor] to 'strip down' [a creditor's] lien [when the] claim is secured by a lien and has been fully allowed pursuant to [11 U.S.C.] § 502); see also *Ryan*, 725 F.3d at 625. Reading §1325(a)(5) to preclude cram down would not only render §1325(a)'s hanging paragraph superfluous but would also be inconsistent with legions of decisions addressing how cram down may be accomplished in chapter 13 cases. See, e.g., *Rash*, 520 U.S. at 957, 960; *Till*, 541 U.S. at 468–69; *In re Wright*, 492 F.3d at 830.

[6] HUD also cites *Colbourne v. Ocwen (In re Colbourne)*, No. 12-14722, 2013 WL 5789159 (11th Cir. Oct. 29, 2013), in support of the proposition that a chapter 13 plan cannot permanently modify creditors' rights

*a*

Aside from §1325(a)(5)(B)(i)(I)(bb)'s retain-lien-until-discharge provision, a debtor's ability to discharge his personal liability to a particular claimholder has no apparent statutory connection to his debt-adjustment plan's ability to eliminate that claimholder's lien rights. In bankruptcy, "a discharge . . . extinguishes the debtor's personal liability on his creditor's claims." *Johnson*, 501 U.S. at 84 n.5. A discharge does so by "operat[ing] as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a ***personal liability of the debtor***". 11 U.S.C. §524(a)(2) (emphasis added); see also *In re Okosisi*, 451 B.R. 90, 95 (Bankr. D. Nev. 2011). And, as the Supreme Court has explained, "a bankruptcy discharge . . . leav[es] intact . . . an action against the debtor *in rem*." *Johnson*, 501 U.S. at 84; see also *Dewsnup*, 502 U.S. at 418.

Again, although HUD's claim is an "unsecured claim" under §506(a), it consists only of the right to enforce its mortgage lien and collect the amount owed by foreclosing on the Monroes' property because the Monroes discharged their personal liability to HUD in their previous chapter 7 case. The fact that §506(a) treats HUD's claim as "unsecured" does not transform HUD's claim into a recourse claim—unlike chapter 11, chapter 13 contains no provision treating nonrecourse claims as if the creditor had recourse. See 11 U.S.C. §1111(b)(1)(A).

Thus, the Monroes could not discharge HUD's right to initiate "an action against [them] *in rem*" to satisfy the amount owed even if a chapter 13 discharge were

---

unless the debtor receives a discharge. *Colbourne* involves a debtor's attempt to cram down a creditor's claims that were secured by first-priority mortgage liens on two different investment properties. Because the claims were secured by first-priority liens that attached to value in the properties, the creditor held two "allowed secured claim[s]" for purposes of §§506(a) and 1325(a)(5). As a result, §1325(a)(5)(B)(i)(I) required the debtor's chapter 13 plan to provide that the creditor retain its liens until discharge or repayment of the underlying debts as determined by nonbankruptcy law. *Id.* at *1–2. Thus, like *Lilly*, *Colbourne* is inapplicable to this case because it involved claims whose treatment in the debtor's chapter 13 plan were governed by §1325(a)(5).

16

available to them. *Johnson*, 501 U.S. at 84. As a result, the modification the Monroes seek is not "traditionally only . . . achieved through a discharge". *Jarvis*, 390 B.R. at 605–06. Because HUD lacks an allowed secured claim, §1325(a)(5)(B)(i)(I)(bb) does not apply, and the Code's discharge provisions otherwise have no bearing on whether the court can confirm a chapter 13 plan that, if fully performed by the Monroes, will permanently modify the rights of creditors provided for in the plan.

*b*

The possibility of "springing liens" under §§348 and 349 also does not provide a basis for reserving lien stripping under §1322(b)(2) to plans proposed by discharge-eligible chapter 13 debtors. Sections 348 and 349, as mentioned above, provide that when a chapter 13 case is converted to another chapter or dismissed, creditors' liens continue to secure those claims that have not been fully repaid. §§348(f)(1)(C) & 349(b); 3 COLLIER, *supra*, ¶348.07[4], at 348-25 to -28 & ¶349.03[1], at 349-12. These sections entail only that a no-discharge chapter 13 plan—indeed, any chapter 13 plan—must be fully performed to eliminate the contingent right preserved by §§348 and 349, and modify permanently liens on property provided for in the plan.

If a chapter 13 plan is fully performed, the case is neither converted nor dismissed. Upon completion of the plan—regardless of whether the court grants the debtor a discharge under §1328—the chapter 13 bankruptcy estate is "fully administered" and closed under 11 U.S.C. §350. See 11 U.S.C. §350(a) ("After an estate is fully administered and the court has discharged the trustee, the court shall close the case."). Closing the case without a discharge is no novel course. When, for example, an individual debtor fails to file a financial management course certificate, which Congress in 2005 made a prerequisite to individual-debtor discharges, see 11 U.S.C. §§727(a)(11) & 1328(g); Fed. R. Bankr. P. 1007(b)(7), a court closes the case without a discharge, see 3 COLLIER, *supra*, ¶350.03[4], at 350-11.

17

Furthermore, 11 U.S.C. §1307—which governs "[c]onversion or dismissal" of cases filed under chapter 13—does not require a court to either convert or dismiss a chapter 13 case once a no-discharge chapter 13 plan is fully performed. See 11 U.S.C. §1307(c)(1)–(11). Section 1307(c)(8), to the contrary, implies that completion of a chapter 13 plan is *not* a basis for a court to either convert or dismiss a chapter 13 case; it states, "the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, . . . for cause, including . . . termination of a confirmed plan by reason of the occurrence of a condition specified in the plan *other than completion of payments under the plan*". 11 U.S.C. §1307(c)(8) (emphasis added). Thus, nothing in the Code requires a court to convert or dismiss a chapter 13 case when the plan is completed by a discharge-ineligible debtor. And, absent conversion or dismissal, §§348 and 349 do not reinstate liens that a chapter 13 plan has extinguished.

3

As a general principle, the Code does not otherwise support *Jarvis*'s view that a no-discharge chapter 13 plan cannot permanently modify the rights of creditors who hold unsecured claims. Nothing in §1325, nor any other provision of the Code, explicitly forbids confirmation of a chapter 13 plan that modifies the rights of a holder of an unsecured claim simply because the debtors are ineligible for a discharge. To the contrary, the Code and controlling precedent support the position that a chapter 13 plan may modify permanently the rights of holders of unsecured claims.[7]

---

[7] Code sections other than §1325(a)(5) may impose limitations on the ability of some discharge-ineligible chapter 13 debtors to eliminate underwater liens through their chapter 13 plans. For example, 11 U.S.C. §1325(a)(3)'s requirement that a debtor propose a chapter 13 plan in good faith may limit some debtors' ability to propose a confirmable plan, at least if the plan's only effect is to eliminate a lien that survived a debtor's recent chapter 7 discharge. See *Branigan*, 716 F.3d at 338; *In re Fair*, 450 B.R. at 858. Here, however, the Monroes commenced this chapter 13 case almost three years after receiving their chapter 7 discharge and they have proposed a 60-month chapter 13 plan that seeks to pay creditors over $20,000 through the plan and modify the rights of holders of claims other than HUD, including the curing of a

18

As already discussed, §1322(b)(2) allows a chapter 13 plan to modify the rights of holders of unsecured claims, including the state-law lien rights of a holder of a claim that is "unsecured" under §506(a). Once a chapter 13 plan is confirmed, its terms bind the debtor and all creditors: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). Unless the plan or the confirmation order provides otherwise, confirmation of the plan "vests all of the property of the estate in the debtor[] . . . free and clear of any claim or interest of any creditor provided for by the plan." §1327(b) & (c).

There is no controlling authority interpreting "free and clear" under §1327. But the Seventh Circuit has construed 11 U.S.C. §1141(c)'s similar "free and clear" language to mean that if a plan provides for the lienholder's claim without preserving the lien, the plan eliminates the lien: "[T]he default rule for [lienholders] who file claims for which provision is made in the plan of reorganization is extinction and is found in the Code itself." *In re Penrod*, 50 F.3d 459, 462 (7th Cir. 1995). The Seventh Circuit has also held that when a creditor participates in the bankruptcy proceeding, confirmation of a reorganization or debt-adjustment plan can permanently extinguish liens on estate property. See *id.* at 462–63 (addressing similar chapter 11 provisions); *Airadigm*, 519 F.3d at 648 ("[I]f a secured creditor participates in the debtor's bankruptcy and the ultimate plan does not preserve the creditor's interest, the interest is gone."); see also *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) ("It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan."); *In re Pence*,

---

$15,000 mortgage-loan arrearage owed to Wells Fargo. In all events, HUD conceded during oral argument that the Monroes have proposed their chapter 13 plan in good faith.

19

905 F.2d 1107, 1110 (7th Cir. 1990) (holding that creditor was bound by a chapter 13 plan that provided for full repayment of its claim and release of its lien); cf. *Adair v. Sherman*, 230 F.3d 890, 894–95 (7th Cir. 2000) (explaining that provisions of a confirmed chapter 13 plan are not subject to collateral attack). And the Supreme Court has explained that an order confirming a chapter 13 plan is a final judgment binding on creditors whose claims are addressed in the plan and is subject to modification only by appeal, revocation under 11 U.S.C. §1330, or collateral attack under the narrow avenues provided by Federal Rule of Civil Procedure 60(b), which are made generally applicable in bankruptcy cases by Federal Rule of Bankruptcy Procedure 9024. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269–70, 275 (2010).

Moreover, as §1327's text and the holdings of these cases demonstrate, the principle that liens pass through bankruptcy unaffected cannot support the conclusion that a no-discharge chapter 13 plan may not extinguish liens. As *Penrod* cautions, "like most generalizations about law, the principle that liens pass through bankruptcy unaffected cannot be taken literally." 50 F.3d at 462. *Penrod* holds that a lien on property provided for in a chapter 11 plan survives only to the extent allowed in the plan or in the order confirming the plan. *Id.* at 462–63. And no difference between the chapter 11 and chapter 13 plan confirmation provisions suggests that the "pass-through" principle has any greater effect in cases filed under chapter 13 than in those filed under chapter 11. See *In re Pence*, 905 F.2d at 1109–10 (addressing the general principle that liens pass through bankruptcy unaffected in the context of a case filed under chapter 13 and stating, ***"unless the bankruptcy proceeding avoided it***, [the creditor's] lien on [the debtor's] residence should remain intact" (emphasis added)); see also *Palomar*, 722 F.3d at 995 (suggesting §1322(b)(2) allows lien stripping).

None of the courts relying on the pass-through principle to disallow lien stripping in no-discharge chapter 13 cases explain why the principle does not equally

apply when a chapter 13 debtor is eligible for a discharge. And, as explained above, lien stripping by chapter 13 plans proposed by discharge-eligible chapter 13 debtors is widely accepted. See *Woolsey v. Citibank, N.A. (In re Woolsey)*, 696 F.3d 1266, 1279 (10th Cir. 2012) (collecting authorities).

C

HUD's final argument is that allowing discharge-ineligible chapter 13 debtors to confirm plans that strip underwater liens provides those debtors with a "'de facto discharge [that] undermines Congress's desire to prevent debtors from exploiting loopholes in the bankruptcy system at the expense of other entities.'" No. 13-02747, CM-ECF No. 14, at 9 (quoting *Lindskog*, 480 B.R. at 919). Some decisions have embraced this argument, marshaling the scant legislative history of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to conclude that allowing a no-discharge chapter 13 plan to eliminate underwater liens is contrary to "legislative intent." See, e.g., *Lindskog*, 480 B.R. at 918–19; *Blosser*, 2009 WL 1064455, at *1; *Jarvis*, 390 B.R. at 605–06; see also *Branigan*, 716 F.3d at 341 (Keenan, J., dissenting).

The legislative history relied on by these decisions is that (a) Congress titled §306 of the 2005 Amendments—which added subsection (i)(I) to §1325(a)(5)(B)—"Giving Secured Creditors Fair Treatment in Chapter 13", see Pub. L. No. 109-8, §306, 119 Stat. 23, 80–81 (2005), and (b) included in a House Report the statements that (i) Congress added §1325(a)(5)(B)(i) "to require—as a condition of confirmation—that a chapter 13 plan provide that a secured creditor retain its lien until the earlier of when the underlying debt is paid or the debtor receives a discharge", H.R. REP. NO. 109-31, pt. 1, at 71–72 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 140, and (ii) one of the factors motivating the passage of the 2005 Act was to remove from the "bankruptcy system . . . loopholes and incentives that allow and—sometimes—even encourage opportunistic personal filings and abuse", *id.* at 5, *reprinted in* 2005 U.S.C.C.A.N. at 92.

21

These legislative tidbits, however, add nothing to the statutory text of §1325(a)(5)(B)(i)(I), which, in fact provides that chapter 13 plans must preserve the lien rights of only holders of "allowed secured claim[s]" until the debt is paid or the debtor receives a discharge. §1325(a)(5)(B)(i)(I). As already explained, both §1325(a)(5)'s structure and the controlling precedent applying it foreclose reading "allowed secured claim" in §1325(a)(5) to mean any claim secured under state law rather than any secured claim as determined under §506(a). Thus, even if one takes the view that allowing no-discharge chapter 13 debtors to eliminate underwater liens through their chapter 13 plans is contrary to a congressional plan to protect liens from repeat filers, the statute's text and structure compel a conclusion that §1325(a)(5)(B)(i)(I) did not give full effect to that plan. See *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (courts' function is to enforce the Code "according to its terms"); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6–7 (2000) (same); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–43 (1989) (same).

The modification that the Monroes seek to accomplish through their chapter 13 plan would unquestionably have been available to them had they elected in 2010 to file a case under chapter 13 rather than a case under chapter 7 (presuming that then, like now, the Monroes owed senior lienholder Wells Fargo more than their residence was worth). In that instance, the Monroes would have been eligible for a chapter 13 discharge, and, as already explained, no court of appeals has rejected the principle that a discharge-eligible chapter 13 debtor can strip a wholly underwater homestead lien through a chapter 13 plan.

It is a bridge too far to infer that §1328(f)'s 4-year discharge prohibition imposes an extra-textual limitation on a chapter 13 plan's ability to modify the rights of holders of claims that §506(a) treats as unsecured. For the reasons explained above, the ability of chapter 13 plans to modify creditors' rights is a product of §§1322 and 1327, and is

22

limited by §1325 only when the right is possessed by a creditor that holds an "allowed secured claim" as determined by §506(a). The Code's limitations on discharge—the effect of which is to eliminate personal liability—do not affect a chapter 13 plan's ability to modify unsecured claimholders' rights.

While Congress has plainly disabled some repeat bankruptcy filers from obtaining additional relief under the Code, see, e.g., 11 U.S.C. §109(g), nothing in the text added by the 2005 Amendments bars debtors who successfully discharged their debts through a chapter 7 case from seeking the debt-adjustment benefits available in a chapter 13 case. Congress restricted for four years those debtors' ability to discharge their personal liabilities in a chapter 13 case, but it left unaltered their ability to confirm and perform a chapter 13 plan. It is the effect of that performance, rather than discharge, that allows those debtors to eliminate an underwater lien. Thus, even after the 2005 Amendments, neither the Code's text nor its structure provide a convincing basis to conclude that debtors' ineligibility for discharge limits their ability to modify through their chapter 13 plans the rights of holders of claims secured by underwater liens.

IV

The Supreme Court recognized long ago that a plan of reorganization can extinguish the security interests of junior lienholders when the value of a debtor's property is less than the amount due to the senior lienholder. See *In re 620 Church St. Bldg. Corp.*, 299 U.S. 24, 25–27 (1936). The law is well established, moreover, that this lien-stripping principle applies to plans proposed by chapter 13 debtors who are eligible for a discharge: A court may confirm a chapter 13 plan that "modifies" the state-law lien rights of a creditor holding a junior-mortgage lien on a debtor's principal residence if the mortgaged property's value is less than the amount of the senior lienholder's claim.

23

There is no compelling reason to conclude that this principle does not apply equally to chapter 13 debtors who are ineligible for a discharge. Section 1327 and controlling authority make clear that it is the statutory effect of a confirmed chapter 13 plan providing for the modification of creditors' rights, rather than the discharge of the debtor's personal liabilities, that eliminates liens contingent upon the debtor's complete performance of the plan. And, although §1325(a)(5) requires no-discharge chapter 13 plans to pay to the holders of "allowed secured claim[s]" the full amount owed under nonbankruptcy law, that limitation does not apply to a wholly underwater lien because the holder of such a lien does not have an "allowed secured claim" for purposes of §1325(a)(5). Thus, a chapter 13 debtor's ability to strip an underwater-junior-mortgage lien through his chapter 13 plan is unaffected by the debtor's ineligibility to receive a discharge.

For these reasons, I conclude that the Monroes' chapter 13 plan can treat HUD's claim as unsecured and provide that HUD's mortgage lien will be extinguished permanently upon the Monroes' completion of their chapter 13 plan. I will enter a separate order denying HUD's objection to confirmation of the Monroes' proposed plan, and I will schedule a status conference to determine whether there are any remaining issues to be adjudicated in this adversary proceeding.

April 25, 2014

G. Michael Halfenger
U.S. Bankruptcy Judge

24